<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAMILOLA OBEMBE, <br><br> Plaintiff, <br><br> v. <br><br> TATA CONSULTANCY SERVICES, LTD., IDC TECHNOLOGIES, INC., <br><br> Defendants. | Case No. 2:25-cv-01027 (BRM) (JRA) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Damilola Obembe's ("Plaintiff") Motion for Default Judgment against Defendant IDC Technologies, Inc. ("IDC") pursuant to Fed. R. Civ. P. 55(b)(2). (ECF No. 20 (the "Motion").) The Complaint in this matter was filed on February 5, 2024, against Tata Consultancy Services, Ltd. ("TCS")[1] and IDC seeking damages and equitable relief for employment discrimination and conspiracy. (ECF No. 1.) Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Plaintiff's Motion for Default Judgment is **DENIED**.

**I.   BACKGROUND**

Generally, courts treat all pleadings and allegations of a plaintiff as true on a motion for default judgment. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

TCS is an information technology ("IT") staffing company based in Mumbai, India with a US headquarters in New Jersey. (ECF No. 1 ¶ 1.) IDC is an IT staffing and recruitment firm that

---

[1] TCS appeared and filed an Answer on April 28, 2025. (ECF No. 16.)

1

places IT personnel with businesses in various industries. (*Id.* ¶ 9.) IDC is headquartered in California and does business "throughout the U.S., including in New Jersey." (*Id.*) IDC "contract[ed] with TCS to recruit, assess, and refer candidates [to TCS] from the marketplace for open roles." (*Id.* ¶¶ 12, 17, 18.) Plaintiff is a Maryland resident of Nigerian national origin who identifies as Black. (*Id.* ¶¶ 5, 7.)

Plaintiff alleges that, on March 1, 2023, a recruiter from IDC contacted her about a full-time remote role with TCS. (*Id.* ¶ 26.) Plaintiff discussed her qualifications with the recruiter and agreed upon a salary IDC would submit to TCS in advancing her candidacy for the remote role. (*Id.*) Plaintiff also conferred to IDC a "Right to Represent," which is an "exclusive right to submit the candidate's resume to TCS for the role." (*Id.* ¶ 18.) Sometime after this conversation, Plaintiff received an email from a senior consultant at IDC stating, in response to her candidacy: "No Nigerians are accepted for Practice roles, Latin & Indians only." (*Id.* ¶ 5.) Plaintiff believes the email was meant as internal communication between IDC employees and was mistakenly sent to her. (*Id.* ¶ 29.) Minutes later, the IDC consultant wrote to Plaintiff that the "feedback . . . was destined for some other use" and asked Plaintiff to "[p]lease ignore it." (*Id.*)

TCS did not interview or hire Plaintiff. (*Id.*) On November 8, 2023, Plaintiff filed timely charges against IDC and TCS with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 30.) On September 27, 2024, the EEOC issued a Determination against IDC and TCS, finding "reasonable cause to believe that [Plaintiff] was discriminated against due to her race and national origin, in that she was not hired despite her qualifications, in violation of Title VII." (*Id.*; ECF No. 1-4.) Plaintiff received a Notice of Right to Sue both entities from the EEOC on November 22, 2024. (ECF No. 1 ¶ 30.)

Plaintiff filed her Complaint on February 5, 2024. (ECF No. 1.) Plaintiff alleged the following against IDC: disparate treatment under 42 U.S.C. § 2000e-2 ("Count One"), disparate treatment under 42 U.S.C. § 1981 ("Count Two"), and conspiracy under 42 U.S.C. § 1985(3) ("Count Three"). (*Id.*) Plaintiff served IDC on February 25, 2025. (ECF No. 3.) On May 2, 2025, Plaintiff moved for an entry of default against IDC. (ECF No. 18.) The Clerk of Court entered a default against IDC on May 5, 2025. (ECF No. 19.) Plaintiff then brought this Motion on May 19, 2025, to which IDC failed to respond.[2] (ECF No. 20.)

## II. LEGAL STANDARD

Once the Clerk makes an entry of default, "Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *La. Counseling & Family Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing Fed. R. Civ. P. 55(b)(2)). The district court, rather than the Clerk, must enter the judgment where the amount is not a sum certain or cannot be made certain by computation. Fed. R. Civ. P. 55(b).

The Third Circuit generally disfavors default judgment. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008). While entry of a default judgment is within the district court's discretion, cases should "be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*,

---

[2] On May 29, 2025, TCS filed an opposition to the Motion, despite not being the subject of it, arguing default judgment was inappropriate where a similarly situated defendant has appeared and is contesting the merits of the suit, and that the Third Circuit has expressed a preference to withhold default judgment until after a decision on the merits in multi-defendant suits. (ECF No. 24 at 2–4.) On June 9, 2025, Plaintiff replied, arguing that reserving on default judgment is only appropriate when it would "create *inconsistent and unsupportable results* as to" the other defendants. (ECF No. 25 at 1–3.) Because, as discussed *infra* Section III, the Court lacks jurisdiction over IDC, it cannot grant default judgment and therefore does not evaluate the merits of these arguments.

732 F.2d 1178, 1181 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

Prior to entering a default judgment, the Court is required to: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether Defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Trs. of the UFCW 126 & Emps. Pension Fund v. Laracca*, Civ. A. No. 16-4759, 2017 U.S. Dist. LEXIS 75091, at *7 (D.N.J. May 17, 2017) (quoting *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, Civ. A. No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015)). In addition, the Court must make explicit factual findings as to: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008); *see also Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) ("[These] [t]hree factors control whether a default judgment should be granted[.]").

Generally, courts treat all pleadings and allegations of a plaintiff as true on a motion for default judgment. *See Comdyne I*, 908 F.2d at 1149. However, the Court is not required to accept a plaintiff's conclusions of law and, therefore, "it remains for the [C]ourt to consider whether the unchallenged facts constitute a legitimate cause of action" against defendants. *Directv, Inc. v. Asher*, Civ. A. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688, at 58–59 (3d ed. 1998)).

### III. DECISION

Plaintiff argues she is entitled to a default judgment because the Court has proper jurisdiction over IDC, IDC has been properly served, and she has adequately pled the elements of her claims. (ECF No. 20 at 7–20.) However, the Court lacks personal jurisdiction over IDC and cannot grant the Motion.

#### A. General Personal Jurisdiction

Plaintiff argues general jurisdiction over IDC exists due to IDC's "continuous and systematic business contacts within the State of New Jersey in its recruitment efforts for TCS, and . . . for other employers." (ECF No. 20 at 14.)

A federal court has general jurisdiction over a corporation when it is "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) (citing *Goodyear*, 564 U.S. at 924).

Plaintiff fails to allege that IDC's contacts in New Jersey are "so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. Nor does Plaintiff allege New Jersey is IDC's "place of incorporation [or] principal place of business," the paradigmatic general jurisdiction forums. *Daimler*, 571 U.S. at 118 (citing *Goodyear*, 564 U.S. at 924). Instead, Plaintiff alleges IDC is headquartered in California and does business "throughout the U.S., including in New Jersey." (ECF No. 1 ¶ 9.)

Because IDC is neither incorporated nor has its principal place of business in New Jersey, the Court does not have general personal jurisdiction over it.

### B. Specific Personal Jurisdiction

Plaintiff also argues the Court has specific personal jurisdiction over IDC because IDC "purposefully directed its activities to New Jersey . . . including by recruiting and referring candidates located in New Jersey (and elsewhere) for positions in New Jersey with TCS and other employers," thereby availing itself of the forum. (ECF No. 20 at 10.) Further, Plaintiff argues the current dispute "arises out of or relates to IDC's contacts with [New Jersey]" because it stems from IDC's contractual relationship with and recruitment efforts for TCS, a company headquartered in New Jersey. (*Id.* at 11–12.)

The Third Circuit uses a three-part test to assess specific personal jurisdiction. First, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Second, the litigation must "arise out of or relate to" at least one of those activities. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d. Cir. 2007) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). If both requirements are met, courts then consider whether asserting personal jurisdiction would "comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 320 (1945)). Although a plaintiff maintains the burden of demonstrating personal jurisdiction exists in a motion for default judgment, they may satisfy that burden through a *prima facie* showing on the pleadings and supporting materials. *See Gen. Nutrition Inv. Co. v. Laurel Season, Inc.*, Civ. A. No. 20-691, 2020 WL 5077465, at *2 (W.D. Pa. Aug. 26, 2020).

Plaintiff has not pled a sufficient basis for specific personal jurisdiction. Plaintiff alleges IDC is "[o]ne of TCS's third-party vendors" who "contract[s] with TCS to recruit, assess, and refer candidates from the marketplace for open roles." (ECF No. 1 ¶¶ 17, 18.) Therefore, Plaintiff argues

6

IDC purposefully availed itself of the New Jersey forum through its contract with TCS, which is nationally based in New Jersey. (ECF No. 20 at 10.) However, Plaintiff has not cited any authority indicating a plaintiff may assert personal jurisdiction based on a defendant's contract with a third party (even if that party is a co-defendant), nor has the Court identified any.[3]

Even if the necessary contacts could be established when the plaintiff is not a party to the contract through which the defendant purposefully availed itself of the forum, the existence of "a contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'" *Grand Entertainment Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 478). Courts must also evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479. But the Complaint does not allege facts about IDC's contract or dealings with TCS that might establish purposeful availment. (ECF No. 1.)

Plaintiff also alleges IDC "recruits and refers candidates located within [New Jersey] to TCS" (*Id.* ¶ 12), but this allegation cannot serve as the basis for specific jurisdiction over IDC for two reasons. First, courts in this District have found specific personal jurisdiction lacking over disputes involving the employment of remote workers, even when the employee in question was

---

[3] Indeed, courts typically assess whether contractual relations and negotiations create "minimum contacts" with a forum when a complaint contains a breach of contract claim, which is not present here. *See, e.g.*, *Maser v. Deeble*, Civ. A. No. 17-99, 2017 WL 930795, at *4 (W.D. Pa. Mar. 9, 2017) (discussing how courts evaluate whether a contractual relationship supports the exercise of personal jurisdiction "[i]n a breach of contract case"). The only case the Court has identified that comes close to the factual circumstances here is *Carter Ledyard & Milburn LLP v. Carrascosa*, Civ. A. No. 07-3216, 2010 WL 4609501, at *6 (D.N.J. Nov. 1, 2010), in which a court in this District denied a motion for default judgment brought by a law firm seeking to collect legal fees related to a child custody dispute, for which two family members of the mother said they would pay. There, the Court noted it was aware of no authority "that a nonresident defendant's agreement to pay for services, performed on the behalf of a third party by a non-resident plaintiff, provides a sufficient basis for the exercise of personal jurisdiction . . . in the absence of a single direct contact linking the non-resident defendant with the forum state." *Id.*

located in the forum. *See Haller v. Usman*, Civ. A. No. 22-773, 2024 WL 124629, at *9 (D.N.J. Jan. 10, 2024) (granting motion to dismiss for lack of personal jurisdiction because no evidence showed "[d]efendants instructed [plaintiff] to work remotely in order to conduct business in New Jersey"); *Tripp v. Ascentage Pharma Grp. Int'l*, Civ. A. No. 22-05934, 2023 WL 5425506, at *6 (D.N.J. Aug. 23, 2023) (concluding foreign employer had "not purposefully availed itself of the New Jersey forum under *O'Connor*" because "[a]lthough [plaintiff] worked remotely from his home in New Jersey, paid New Jersey taxes, collected New Jersey unemployment and disability benefits . . . those actions were not particular to New Jersey and could have occurred in any state where [plaintiff] chose to work"); *cf. Castillero v. Xtend Healthcare, LLC*, Civ. A. No. 22-02099, 2023 WL 8253049, at *11 (D.N.J. Nov. 29, 2023) ("[A] remote worker based in New Jersey does not automatically confer personal jurisdiction over the out-of-state employer."). Finding specific jurisdiction over IDC through its preliminary recruitment of Plaintiff, an out-of-forum remote work candidate, is even less tenable.

Second, even assuming, *arguendo*, IDC's recruitment of New Jersey residents for positions in the state could constitute purposeful availment of the forum, this dispute does not "arise out of or relate to" those activities. *O'Connor*, 496 F.3d at 317. Plaintiff is a Maryland resident who applied for a "full-time remote role" with TCS. (ECF No. 1 ¶¶ 7, 26.) As pled, Plaintiff was not a candidate recruited within New Jersey for a New Jersey role, so IDC's recruitment efforts in the state are irrelevant to the dispute. *O'Connor*, 496 F.3d at 317.

Therefore, Plaintiff has not made a "prima facie showing" the Court has specific personal jurisdiction over IDC. *Gen. Nutrition*, 2020 WL 5077465, at *2. As a result, the Court lacks personal jurisdiction over IDC and cannot issue a default judgment against it. *See D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) ("A default judgment entered without personal

jurisdiction is void."); *see also Mark IV Transportation & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017) ("[W]hen a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." (quoting *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)).).

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Default Judgment (ECF No. 20) is **DENIED**. Because the Court has determined it lacks personal jurisdiction over IDC, the Court will order Plaintiff to show cause why the claims against IDC should not be dismissed. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Dated: August 20, 2025