**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAMILOLA OBEMBE,<br><br>Plaintiff,<br><br>v.<br><br>TATA CONSULTANCY SERVICES, LTD. and IDC TECHNOLOGIES, INC.,<br><br>Defendants. | Case No. 2:25-cv-01027 (BRM) (JRA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Damilola Obembe's ("Plaintiff") First Objection (ECF No. 79) and Second Objection (ECF No. 83) to the June 2, 2026 Text Order (ECF No. 77)[1] issued by the Honorable Judge José R. Almonte, U.S.M.J. ("Judge Almonte") that denied as moot Plaintiff's discovery dispute (ECF No. 71) with Tata Consultancy Services ("TCS"). TCS responded to the First and Second Objections. (ECF Nos. 85, 98, 100.) Having reviewed the submissions filed in connection with the objections and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Plaintiff's objections are **OVERRULED** and Judge Almonte's June 2, 2026 Order is **AFFIRMED**.

[1] The text order is dated May 29, 2026, but was posted on June 2, 2026. Because the parties refer to the text order as the "June 2, 2026 Text Order," the Court will do the same.

## I. BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural history of this matter and therefore, only includes the facts and procedural history necessary to review the pending objections.

Plaintiff filed her Complaint on February 5, 2024, alleging the following against TCS[2]: disparate treatment under 42 U.S.C. § 2000e-2 ("Count One"), disparate treatment under 42 U.S.C. § 1981 ("Count Two"), and conspiracy under 42 U.S.C. § 1985(3) ("Count Three"). (ECF No. 1.) Plaintiff alleges that in March 2023, an IDC Technologies recruiter told her in an email that "no Nigerians" would be considered for a Salesforce Business Analyst role at TCS and that she was denied that position because of her race and Nigerian national origin. (*Id.* ¶ 28.)

The parties engaged in ESI-related discovery disputes concerning TCS's production of hiring records related to requisition GRS 261969 and IDC Technologies' candidate submissions to TCS during the relevant period. (ECF No. 71.) On March 12, 2026, in response to a dispute raised by Plaintiff (ECF No. 59; *see also* ECF No. 60 (TCS Resp.)), Judge Almonte ordered TCS to serve a Rule 26(g) certification confirming the completeness and accuracy of its responsive productions. (ECF No. 62.) TCS served that certification on March 24, 2026, representing that specific Bates-Numbered documents constituted accurate and complete outputs of TCS's GRS and iGlance enterprise systems. (ECF No. 63-1.)

On March 24, 2026, Plaintiff filed a "notification regarding status of (TCS-OBEMBE0000779-0001221)" and a "unilateral ESI dispute letter" challenging TCS's compliance with the March 12, 2026 certification order. (ECF No. 65, 66.) Plaintiff contended that

[2] Plaintiff also named IDC Technologies, Inc. ("IDC Technologies") as a defendant in her Complaint, but the claims against IDC Technologies were dismissed for lack of personal jurisdiction. (ECF No. 34.)

TCS's supplemental production did not consist of genuine system-of-record exports from TCS's systems, but rather of manually created Excel files bearing litigation-period metadata and human authorship fields, rendered PDF artifacts, and a review-platform load file. (*Id.*) Plaintiff identified four specific deficiencies: (1) failure to cure prior HRIS production; (2) failure to produce any system-of-record data for the Salesforce Business Analyst role Plaintiff alleges was the position at issue; (3) absence of submission-chain documentation or application-event records sufficient to verify whether Plaintiff's application was submitted to TCS, compounded by the fact that TCS-OBEMBE0000779 through 0001221 were absent from the production when the certification was filed and transmitted only after Plaintiff notified TCS of the omission; and (4) failure to produce system-of-record data establishing the identity, provenance, and lifecycle of GRS 261969. (*Id.*) Plaintiff requested leave to move for sanctions under Rule 37(b)(2), an order striking the Rule 26(g) certification, and an award of reasonable expenses. (*Id.*)

On March 26, 2026, TCS responded that, as conceded by Plaintiff, TCS provided the documents that were inadvertently missing after it was brought to TCS's attention. (ECF No. 67.) As to Plaintiff's challenge to the authenticity and completeness of the production, TCS noted that the Rule 26(g) certification "confirmed that the information therein was an accurate and complete export of data from TCS's iGlance enterprise portal system" and that "certified the accuracy and completeness of the remaining items (TCS-OBEMBE0000780-1221) as emails between relevant TCS personnel and IDC related to the relevant TCS client and time period." (*Id.*) Nevertheless, TCS stated it would not oppose Plaintiff's request for a certification specific to TCS-OBEMBE0000779-1221 and that she had the right to conduct her own "forensic analysis." (*Id.*)[3]

[3] TCS also noted that it would be willing to submit a joint discovery dispute letter if Plaintiff would provide her portion of the submission for filing. Based on the Court's reading of the letters and

On April 6, 2026, Judge Almonte held a virtual conference, resolved any outstanding discovery disputes, denied Plaintiff's post-certification disputes as moot, and denied Plaintiff's request for leave to file motions to compel and for sanctions. (ECF No. 70; *see also* Minute Entry dated April 6, 2026.) In doing so, he addressed substantively the same core contentions Plaintiff had been advancing since March 2026—that TCS's production lacked system-of-record provenance and that the Rule 26(g) certification was therefore unsupported. (*Id.*)

On May 11, 2026, the parties filed what appears to be a joint discovery dispute submission, albeit oddly formatted, presenting four categories of ESI deficiency. (ECF No. 71.) The disputes concerned: (1) an alleged metadata inconsistency in Document TCS-OBEMBE0000779 arising from the absence of an OOXML "Company" property in that file as compared to a single-row Excel file in the same production bearing value "TCS" (*id.* at 4); (2) alleged data integrity issues within TCS-OBEMBE0000779, including approximately 2,725 of its 5,789 rows contained no requisition or application identifier (*id.* at 5–7); (3) an alleged gap in Salesforce-related submissions for March 2023, the month of the alleged discriminatory directive (*Id.* at 7–8); and (4) a dispute regarding TCS's Rule 30(b)(6) witness designation (*id.* 8–9). Plaintiff expressly declined to seek specific relief, stating that she raised the disputes solely to preserve them on the record pending expert disclosure and completion of the Rule 30(b)(6) deposition. (*Id.* at 9.)

On May 29, 2026, Judge Almonte held a status conference at which he found that, in light of the Rule 26(g) certification, TCS had complied with its discovery obligations, and he therefore denied Plaintiff's ESI disputes as moot. (ECF No. 77; ECF No. 85-1[4] at 17–19.) Judge Almonte

Plaintiff repeatedly filing "unilateral disputes," it appears the parties had not been communicating or cooperating with each other.

[4] TCS provided the Court with a copy of the transcript of the May 29, 2026 status conference.

declined to deviate from his prior rulings regarding essentially the same dispute (*i.e.*, ECF Nos. 62, 70) and advised Plaintiff that reconsideration would require a sworn report from a qualified e-discovery expert. (ECF No. 85-1 at 6–7, 17–19 (noting that he had "not heard anything that requires [him] to deviate from [his] prior ruling" and that he could not "compel the production of that which defendants don't have").) On June 2, 2026, in connection with and following the conference, Judge Almonte entered a text order memorializing the decision he placed on the record at the conference, granting Plaintiff's request for an extension of discovery in accordance with the Fourth Amended Scheduling Order (ECF No. 76), and warning Plaintiff that she could face sanctions if she does not comply with her discovery obligations. (ECF No. 77.)

Plaintiff timely[5] filed the First and Second Objections to the June 2, 2026 Text Order (ECF No. 77) pursuant to Federal Rule of Civil Procedure 72(a) on June 6, 2026 (ECF No. 79) and June 14, 2026 (ECF No. 83), respectively. TCS responded to the First and Second Objections. (ECF Nos. 85, 98, 100).[6]

## II. Legal Standard

With respect to a district judge's review of a magistrate judge's decision, Federal Rule of Civil Procedure 72(a) states: "The district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* Similarly, this

---

[5] Because the text order was not entered until June 2, 2026, the Court considers both objections to be timely.

[6] Since the filing of these objections, the parties have engaged in a letter-writing campaign, flooding the docket with additional case management and discovery disputes and requests for stays pending adjudication of Plaintiff's objections. In light of the excessive filings, Judge Almonte noted that "it is abundantly clear from these submissions that the parties are experiencing a complete breakdown in communication," ordered the parties to stop "flood[ing] the Court's docket," cancelled the August 14, 2026 conference, and stayed all discovery disputes pending adjudication of Plaintiff's objections. (ECF No. 110.)

Court's Local Rules provide "[a]ny party may appeal from a [m]agistrate [j]udge's determination of a non-dispositive matter within 14 days" and the district court "shall consider the appeal . . . and set aside any portion of the [m]agistrate [j]udge's order found to be clearly erroneous or contrary to law." L. Civ. R. 72.1(c)(1)(A).

A district judge may reverse a magistrate judge's order if the order is shown to be "clearly erroneous or contrary to law" on the record before the magistrate judge. 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter [properly referred to the magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 93 (3d Cir. 1992) (describing the district court as having a "clearly erroneous review function," permitted only to review the record that was before the magistrate judge). The burden of showing a ruling is clearly erroneous or contrary to law rests with the party filing the appeal. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004); *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996).

A district court "will determine that a finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Dome Petroleum Ltd. v. Emp'rs Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *accord Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). The magistrate judge's "ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Kounelis*, 529 F. Supp. 2d at 518; *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998). A district court, however,

will review a magistrate judge's legal conclusions *de novo*. *See Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998) (citations omitted); *see also Haines*, 975 F.2d at 91 (noting that "the phrase 'contrary to law' indicates plenary review as to matters of law").

## III. DECISION

Plaintiff filed two Objections (ECF Nos. 79, 83) to Judge Almonte's June 2, 2026 Text Order (ECF No. 77). In her First Objection, Plaintiff argues that Judge Almonte's advisement of potential sanctions was contrary to law and premature. (ECF No. 79.) TCS contends the sanctions advisement was an informal, appropriate reminder to a *pro se* plaintiff of the consequences of her own stated refusal to cooperate with discovery and was neither clearly erroneous nor contrary to law under Fed. R. Civ. P. 72(a). (ECF No. 85 at 2–7.) In her Second Objection, Plaintiff argues that the mootness ruling was both clearly erroneous and contrary to law. (ECF No. 83.) TCS contends the June 2, 2026 Text Order properly mooted the discovery disputes and that Plaintiff is "confus[ed] over what the . . . [text] order actually means and why it was issued." (ECF No. 98 at 4.) The Court addresses each Objection in turn.

### A. Plaintiff's First Objection

Plaintiff argues that Judge Almonte's June 2, 2026 sanctions advisement was contrary to law because Fed. R. Civ. P. 37(b)(2)(A) cannot be invoked absent a prior order compelling discovery that was subsequently violated and that the advisement was premature because it was issued without transcript review or an opportunity for Plaintiff to be heard on the underlying deposition conduct. (ECF No. 79.)

Plaintiff mischaracterizes Judge Almonte's order. She treats the June 2, 2026 sanctions advisement as if it were an adjudication, as if Judge Almonte had found her in violation of a discovery order and were assessing the consequences for that violation. Had that been the case, her

argument may have been persuasive—Fed. R. Civ. P. 37(b)(2)(A) does require a preceding motion to compel, an order on that motion, and a violation of that order before sanctions may issue. However, the order did not adjudicate anything, nor did Judge Almonte find she violated it; it merely warned Plaintiff of the consequences of failing to comply in the future.

This warning was not unwarranted. At the May 29, 2026 conference, Plaintiff stated on the record that she would refuse all further deposition testimony. (ECF No. 85-1 at 20–22.) Judge Almonte's response—informing her that such a course could result in the dismissal of her complaint—was not a ruling on any pending motion; it was Judge Almonte's effort to tell the Plaintiff "something that is for [her] benefit." (ECF No. 85-1 at 21:16–18.) Courts routinely give *pro se* litigants exactly this kind of prospective notice, and the Third Circuit has held that a litigant's own announced intent to disregard discovery obligations is itself relevant to the willfulness and personal-responsibility inquiry that would govern any future sanctions motion. *See Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (identifying a litigant's personal responsibility for discovery compliance as a factor bearing on dismissal sanctions); *see also Emerson v. Thiel Coll.*, 296 F.3d 184, 190–91 (3d Cir. 2002) (affirming the district court's dismissal of a *pro se* litigant's complaint due to failure to comply with discovery obligations). Further, the Third Circuit has affirmed dismissal as a sanction for the specific conduct threatened by Plaintiff—refusal to sit for further deposition testimony and answer questions within the scope of discovery. *Hicks v. Feeney*, 850 F.2d 152, 156–57 (3d Cir. 1988).

An advisement that conduct *may* have consequences under the Rules is not an exercise of the Court's authority under Rule 37(b), and therefore it is not subject to Rule 37(b)'s procedural prerequisites. While the predicates noted by Plaintiff govern the imposition of a sanction, they have no bearing on the propriety of telling a litigant, accurately, what the law provides.

Moreover, given that Judge Almonte's June 2, 2026 Text Order (ECF No. 77) adjudicated nothing, Plaintiff's request to have it "stricken or clarified" (ECF No. 79 at 8) fails for lack of ripeness. A live dispute requires a present inquiry, not the contingent possibility that an advisement might someday be misused. *See Texas v. United States*, 523 U.S. 296, 300 (1998); *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (showing ripeness requires a sufficiently concrete adversity, not speculative future harm); *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003).

Accordingly, having reviewed Judge Almonte's June 2, 2026 Text Order's for clear error or being contrary to law and finding the advisement of sanctions was neither, Plaintiff's First Objection is **OVERRULED**.

### B. Plaintiff's Second Objection

Plaintiff argues Judge Almonte's June 2, 2026 order denying her ESI disputes as moot was clearly erroneous and contrary to law, because TCS's Rule 26(g) certification only attested to counsel's "reasonable inquiry" and did not—and legally cannot—resolve the underlying provenance, authenticity, and Rule 34(b)(2)(E) form-of-production disputes over whether the certified files are genuine "GRS" and "iGlance" system exports. (ECF No. 83-1.) She asks the Court to vacate that portion of the order and remand the three disputes for adjudication on their merits. (*Id.*)

Plaintiff looks to *Chafin v. Chafin*, 568 U.S. 165 (2013), to argue for the proposition that a dispute is moot "only when it is impossible for a court to grant any effectual relief whatever." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). However, *Chafin* is inapplicable because it addresses Article III justiciability—whether a federal court retains constitutional power to adjudicate a *claim* because some change in circumstances has eliminated the possibility of relief on that claim. *Id.* Here, Judge Almonte was not adjudicating the justiciability of a claim. He was closing a discovery dispute after

the specific remedy he had ordered to resolve it— a 26(g) certification—was completed. (ECF No. 85-1 at 10–11.) Magistrate judges conclude discovery disputes as resolved, satisfied, or moot in ordinary discovery management with regularity, and those rulings do not import the constitutional doctrine of *Chafin* into discovery rulings by use of the word "moot." Plaintiff's Second Objection (ECF No. 83-1) treats the term "moot" as if it were a jurisdictional holding, when in substance the ruling was a discretionary determination that the specific relief ordered on March 12, 2026 (ECF No. 62) was completed.

Additionally, the record does not support any claim of clear error. The March 12, 2026 Order did not direct TCS to make a further native-format production, did not order a corrected export, and did not require system-side documentation of extraction methodology. (ECF No. 62.) It ordered that TCS "serve Plaintiff with a Rule 26(g) certification confirming that it has produced all relevant documents responsive to those narrowed document requests at issue and that the data it provided to Plaintiff is complete and accurate." (*Id.*) TCS served that certification on March 20, 2026 (ECF No. 63), identifying the disputed productions by Bates number and directly addressing Disputes 1 through 3 (ECF No. 66-1). The Rule 26(g) certification is not a hollow formality; it carries substantive weight, obligating counsel to have made a "reasonable inquiry" before certifying completeness and accuracy. Fed. R. Civ. P. 26(g)(1). For this reason, the 26(g) certification was the remedy Judge Almonte ordered on March 12, 2026 in response to Plaintiff's disputes, because the certification tests a producing party's diligence and holds counsel accountable for the response provided. Judge Almonte found that TCS complied with his order and was satisfied with the certification, resolving Plaintiff's dispute.

Further, Plaintiff's Second Objection does not identify any respect in which TCS failed to comply with the March 12, 2026 Order. Instead, Plaintiff essentially argues that TCS should have

been ordered to do something different or more, such as a native re-export with documented queries and filters, or testimony establishing system origin independent of counsel's signature. (ECF No. 85-1, Ex. A at 14:18–17:24.) That disagreement over the scope of relief, however, is not a basis for reversal under Rule 72(a), which asks only whether the challenged order was clearly erroneous or contrary to law—not whether a different order might also have been reasonable.[7]

Accordingly, under the deferential standard Rule 72(a) prescribes, Plaintiff has not shown that Judge Almonte's ruling was clearly erroneous or contrary to law.[8]

## IV. CONCLUSION

For the reasons set forth above and for good cause having been shown, Plaintiff's First Objection (ECF No. 79) and Second Objection (ECF No. 83-1) are **OVERRULED** and Judge Almonte's June 2, 2026 Order is **AFFIRMED**.

Date: November 17, 2026

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

[7] To the extent that Plaintiff challenges the adequacy of TCS's counsel's Rule 26(g)(1) certification, Rule 26(g)(3) is the specific, fact-intensive vehicle for testing whether a certification was made without substantial justification, carrying its own showing and its own remedies. In the May 29, 2026 hearing, Judge Almonte specifically left this avenue open and extended discovery for Plaintiff to challenge TCS's 26(g) certification with an e-discovery expert. (ECF 85-1 at 17-18.) Therefore, Plaintiff is not prejudiced by the June 2, 2026 Text Order and is not foreclosed from raising her arguments as the record is developed. This is the ordinary course of litigation and discovery; it is not erroneous or contrary to law.

[8] In its response, TCS asks the Court to caution the Plaintiff against any future, improper use of Rule 72(a). (ECF No. 98 at 9.) The Court declines to issue any such prospective restriction, as it is not properly before the Court on this record and no motion for sanctions or other relief is pending. The Court notes only that Rule 72(a) is not a vehicle for successive, unsupported challenges to discovery rulings, and that continued objections raising the same arguments without new evidence may in the future warrant consideration of appropriate relief.